**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
HILDA L. SOLIS,

                      Plaintiff,                  **REPORT AND**
                                                **RECOMMENDATION**

         - against -
                                                  09-CV-4804 (SJ) (JO)

TALLY YOUNG COSMETICS, LLC, et al.,

                      Defendants.
-----------------------------------------------------------X

**JAMES ORENSTEIN, Magistrate Judge:**

       Secretary of Labor Hilda Solis (the "Secretary") commenced this action on November 4, 2009, accusing defendants Tally Young Cosmetics, LLC ("Tally Young") and its owner Margaret Muhleder ("Muhleder") of failing to pay their employees the statutory minimum wage and overtime rates pursuant to the Fair Labor Standards Act of 1938 ("FLSA"). 29 U.S.C. § 201 *et seq.*; Docket Entry ("DE") 1 (Complaint). The defendants never responded either to the Complaint or the Amended Complaint, DE 2, and the Secretary therefore moved for default judgment. DE 9. By order dated March 29, 2010, the Honorable Sterling Johnson, Jr., United States District Judge, referred the matter to me for a report and recommendation. I now make my report and, for the reasons set forth below, respectfully recommend that the court award judgment in the total amount of $34,732.82 (consisting of $17,366.41 in unpaid wages and overtime and $17,366.41 in liquidated damages); enjoin the defendants from withholding the damages award; and require them to produce within 30 days of judgment contact information for all employees who worked at Tally Young after November 2006 as well as employment records from September 2008; permit the Secretary to seek a supplemental award on the basis of such information; and deny the remainder of the Secretary's requests for relief.

I.    Background

The following factual recitation is drawn from the Amended Complaint's uncontested allegations as well as the written materials and uncontroverted testimony that the Secretary submitted in support of her requests for relief. The Secretary brought this action on behalf of employees of Tally Young. Amended Complaint & Ex. A.[1] Tally Young is a limited liability company engaged in the business of manufacturing and selling cosmetic products. *Id.* ¶ III. Muhleder owns Tally Young and actively controls its operations and employees. *Id.* ¶ IV. Tally Young has been engaged in interstate commerce and has had gross annual sales of more than $500,000. *Id.* ¶ VII; DE 15 (Declaration of Molly Biklen) ("Biklen Dec.") Ex. ("BX") 2.

In June 2008, Miriam Knudsen ("Knudsen"), an investigator with the United States Department of Labor, Wage and Hour Division, commenced an investigation of the defendants to determine if they were complying with the FLSA. DE 9-2 (Declaration of Miriam Knudsen) ("Knudsen Dec.") ¶ 4. The Secretary initiated this lawsuit the following year, on November 4, 2009, and filed her Amended Complaint two weeks later. DE 1; DE 2. She alleged that starting at least on November 2, 2006, the defendants willfully and repeatedly deprived their employees of the regular and overtime wages to which they were entitled, in violation of Sections 6, 7, and 15(a)(2) of the FLSA. Amended Complaint ¶¶ VIII – X.

---

[1] The Secretary named 13 employees in the Amended Complaint: Chryssy Abdoul, Samia-Yasir Chaudhry, Diamond Gillespie, Donique Grace, Quianna Harris, Ruth Hazell, Alyssa John, Zahida Khan, Pamela Ramdial, Janet Reid, Jennifer Rodriguez, Lilouti-Rosemary Singh, and Natasha Topey (collectively, the "Named Employees"). Amended Complaint Ex. A. In addition to seeking relief on behalf of those Named Employees, the Amended Complaint also seeks relief on behalf of other employees who have not yet been identified. *Id.* at 4 (prayer for relief ¶ 2). I will generally refer to the Named Employees by their last names alone in the discussion below, but will use full names where necessary to assist the reader in resolving ambiguities in the record.

The Secretary served process on each defendant on January 12, 2010. DE 5; DE 6. The defendants never answered or otherwise responded to the Complaint or Amended Complaint. On March 16, 2010, at the Secretary's request, the Clerk entered the default of each defendant. DE 7; DE 8. The Secretary then sought a default judgment on March 25, 2010. DE 9. The court referred the matter to me the next day. Order dated March 26, 2010.

In a proposed order submitted with her motion, DE 9-3 (Proposed Order), the Secretary asks the court to award monetary damages in the amount of $46,680.28, consisting of $23,340.14 in unpaid wages and overtime due to the 13 Named Employees for the period from September 27, 2007, through August 28, 2008; plus an equal amount in liquidated damages. *Id.* ¶¶ 4-6. She further seeks various forms of injunctive relief, including an order requiring the defendants to produce additional records, as well as an opportunity to seek supplemental damages based on the information in such records. Proposed Order ¶¶ 1-5, 8-10. The Secretary later submitted a supporting memorandum of law as well as a declaration by her counsel, Molly Biklen ("Biklen"). DE 14 ("Mem."); Biklen Dec. The latter document included a series of exhibits, including the Amended Complaint, BX 1; Muhleder's individual tax return for the year 2007, BX 2; insured mail receipts for products the defendants sold and shipped outside of New York State, BX 3; invoices for goods Tally Young bought from outside the state, BX 4; payroll records from November 6, 2006, through August 24, 2008, BX 5 through BX 7 (collectively, the "Company Payroll"); checks paid to employees from October 15, 2006, through August 29, 2008, BX 8 through BX 10 (collectively, the "Paychecks"); schedules obtained from employee Hazell reflecting hours worked by employees from March 24 through May 4, 2008, BX 11 ("Hazell Logs"); investigator Knudsen's summary of unpaid regular and overtime wages, BX 12; and the

Secretary's computations of unpaid regular and overtime wages as of April 30, 2010, BX 13 ("Computations Chart").

Pursuant to the court's referral, I scheduled a damages inquest, and, at my direction, the Secretary so notified the defendants. Order dated May 18, 2010; DE 16. Despite that notice, the defendants did not appear at the inquest which took place on June 3, 2010. *See* DE 17. The Secretary presented the testimony of three witnesses at the inquest: investigator Knudsen and employees Hazell and John. *Id.*; DE 20 (transcript of June 3, 2010 damages inquest) ("Tr."). As the inquest progressed, it became apparent that the Secretary's evidence contained several inconsistencies with respect to the employees' pay rates and hours worked. Accordingly, with my permission, *see* DE 17, the Secretary later filed a supplemental memorandum as well as a summary chart comparing the Hazell Logs to the records Muhleder had provided. DE 18 ("Supp. Mem."); DE 19 ("Comparison Chart").

II.    Discussion

A.    Applicable Law

1.    Default

When a defendant defaults, the court must accept as true all well-pleaded allegations in the complaint, except those pertaining to the amount of damages. Fed. R. Civ. P. 8(b)(6); *see Finkel v. Romanowicz*, 577 F.3d 79, 83 n.6 (2d Cir. 2009) (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)). The fact that a complaint stands unanswered does not, however, suffice to establish liability on its claims: a default does not establish conclusory allegations, nor does it excuse any defects in the plaintiff's pleading. With respect to liability, a defendant's default does no more than concede the complaint's factual

allegations; it remains the plaintiff's burden to demonstrate that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action. *See*, *e.g.*, *id.* at 84; *Directv, Inc. v. Neznak*, 371 F. Supp. 2d 130, 132-33 (D. Conn. 2005) (denying default judgment on several claims based only on conclusory allegations which lacked a sufficient factual basis for a finding of liability); *see also Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51, 69 (2d Cir. 1971) (default-based liability is established by "well-pleaded allegations in a complaint"), *rev'd on other grounds*, 409 U.S. 363 (1973); *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 159 (complaint's assertion of proximate cause necessary for finding of liability must be "properly alleged"); *Levesque v. Kelly Commc'ns, Inc.*, 1993 WL 22113, at *5 (S.D.N.Y. Jan. 25, 1993) ("the Court must be satisfied initially that the allegations of the complaint are 'well-pleaded'") (citing *Hughes*, 449 F.2d at 63).

If the defaulted complaint suffices to establish liability, the court must conduct an inquiry sufficient to establish damages to a "reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999) (quoting *Transatl. Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997)). Detailed affidavits and other documentary evidence can suffice in lieu of an evidentiary hearing. *Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991); *Credit Lyonnais*, 183 F.3d at 155. When a defendant defaults in an action brought under the FLSA, the plaintiff's recollection and estimates of hours worked are presumed to be correct. *Chun Jie Yin v. Kim*, 2008 WL 906736, at *3 (E.D.N.Y. Apr. 1, 2008) (citing *Anderson v. Mt. Clemens Potter Co.*, 328 U.S. 680, 687-88 (1946); *Reich v. S. New England Telecomms. Corp.*, 121 F.3d 58, 66 (2d Cir. 1997)).

2.  FLSA

The FLSA applies to "employers," a class that the statute defines broadly to include "any person acting directly or indirectly in the interest of an employer in relation to an employee[.]" 29 U.S.C. § 203(d). To fall within the ambit of the FLSA's wage and overtime protections, an employee must demonstrate either that he was "engaged in commerce or in the production of goods for commerce," or that his employer was "an enterprise engaged in commerce or in the production of goods for commerce[.]" 29 U.S.C. §§ 206(a), 207(a)(1); *see also Jacobs v. N.Y. Foundling Hosp.*, 483 F. Supp. 2d 251, 257-58 (E.D.N.Y. 2007) (discussing individual and enterprise coverage).[2]

The FLSA requires employers to pay their employees the statutory minimum wage as well as a premium (150 percent of the legally mandated minimum regular wage) for hours worked above 40 hours per week. 29 U.S.C. §§ 206(a), 207(a)(1). Further, an employer must "make, keep, and preserve" records of employee wages, hours, and employment conditions. 29 U.S.C. § 211(c). An employee bringing an action for unpaid overtime compensation under the FLSA has the burden of proving that he performed work for which he was not properly compensated. *S. New England Telecomms.*, 121 F.3d at 66-67 (citing *Mt. Clemens*, 328 U.S. at 687); *Rivera v. Ndola Pharmacy Corp.*, 497 F. Supp. 2d 381, 388 (E.D.N.Y. 2007) (citations

_____

[2] In addition, the employee must not fall within one of the FLSA's numerous exemptions, which apply "primarily [to] workers who 'typically earn [ ] salaries well above the minimum wage ... and ... [are] presumed to enjoy other compensatory privileges.'" *Chenensky v. New York Life Ins. Co.*, 2009 WL 4975237, at *4 (S.D.N.Y. Dec. 22, 2009) (quoting *In re Novartis Wage & Hour Litig.*, 593 F. Supp. 2d 637, 643 (S.D.N.Y. 2009)). Exemptions to the FLSA are typically asserted by employers to avoid liability: "exemptions to the FLSA are 'narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit.'" *Bilyou v. Dutchess Beer Distrib., Inc.*, 300 F.3d 217, 222 (2d Cir. 2002) (quoting *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960)). Nothing in the record suggests that any such exemption applies to the facts of this case.

omitted). If an employer fails to keep records pursuant to 29 U.S.C. § 211(c), the plaintiff may meet this burden "'if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.'" *S. New England Telecomms.*, 121 F.3d at 66-67 (quoting *Mt. Clemens*, 328 U.S. at 687)*. A plaintiff may do so solely through his or her own recollection. *Rivera*, 497 F. Supp. 2d at 388 (citing *Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 335 (S.D.N.Y. 2005)).

      B.     <u>Liability</u>

          1.     <u>Both Defendants Were Employers</u>

The Secretary asserts two causes of action. In the first, she alleges that the defendants failed to pay the applicable minimum wage in violation of Sections 6 and 15(a)(2) of the FLSA. Amended Complaint ¶ VIII. The second cause of action asserts that the defendants failed to pay premium wages for overtime hours, in violation of Sections 7 and 15(a)(2) of the Act. *Id.* ¶ IX. The defendants' default serves to establish the Secretary's allegations that Tally Young's employees did not receive statutorily prescribed wages. Whether the defendants are legally responsible for paying such wages requires a more detailed discussion as to the proof that they were employers within the meaning of the applicable law.

Because the FLSA's broad definition of "employer" offers "little guidance on whether a given individual is or is not an employer" the case law of this circuit provides that "the overarching concern is whether the alleged employer possessed the power to control the workers in question … with an eye to the 'economic reality' presented by the facts of each case[.]" *Herman v. RSR Sec. Servs., Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999) (citations omitted). In making

such a determination, the inquiry focuses on the degree to which the alleged employer exercised formal control over the employee. Courts consider several factors, including "whether the alleged employer (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984) (citations omitted).

The Secretary alleges that Tally Young "regulated the employment of all persons employed by [it], acted directly and indirectly in [its] interest in relation to the employees," and that Muhleder "is the owner of [Tally Young], is in active control and management of [the company], regulated the employment of all persons employed by [the company], [and] acted directly and indirectly in the interest of [the company] in relation to the employees." Amended Complaint ¶¶ III-IV. Moreover, the Secretary's witnesses testified that Muhleder owned Tally Young, hired and fired employees, directed the logging of employee hours, and exercised control over employees' compensation. Tr. at 5, 17, 18, 19, 25, 36-37.

Such allegations and evidence plainly suffice to establish that both Tally Young and Muhleder qualify as employers for purposes of the FLSA, and therefore to impose joint and several liability on both for their violations of the wage laws. *See Moon v. Kwon*, 248 F. Supp. 2d 201, 237 (S.D.N.Y. 2002) (holding that corporate officer who is considered an employer under the FLSA is jointly and severally liable along with corporation); *Donovan v. Kaszycki & Sons Contractors, Inc.*, 599 F. Supp. 860, 867 (S.D.N.Y. 1984) (finding liability under FLSA for individual who was president of company and exercised virtually complete control over it).

2.      <u>Statute of Limitations</u>

The FLSA permits a plaintiff to recover wages within two years after the claim accrues, unless the plaintiff can demonstrate that the employer violated the act willfully, in which case the limitations period is extended to three years. *See* 29 U.S.C. § 255(a). A violation of the FLSA is willful if the employer "either knew or showed reckless disregard for the matter of whether its conduct was prohibited" by the statute. *McLaughlin v. Richland Shoe, Co.*, 486 U.S. 128, 133 (1988); *Young v. Cooper Cameron Corp.*, 586 F.3d 201, 207 (2d Cir. 2009). The burden is on the plaintiff to show willfulness on the part of the employer. *Cooper Cameron*, 586 F.3d at 207 (citation omitted). Mere negligence is insufficient, *Richland Shoe*, 486 U.S. at 133, and "an employer does not willfully violate the FLSA even if it acted 'unreasonably, but not recklessly, in determining its legal obligation.'" *Clarke v. JPMorgan Chase Bank*, 2010 WL 1379778, at *10 (S.D.N.Y. Mar. 26, 2010) (citing *Richland Shoe*, 486 U.S. at 135 n. 13; *Reich v. Waldbaum, Inc.*, 52 F.3d 35, 39 (2d Cir. 1995)).

The Secretary filed the Complaint on November 4, 2009. S*ee* DE 1. Thus, violations from November 4, 2007 are within the limitations period, whether willful or not, while violations prior to that date are timely pleaded only if they were willful.

The Secretary asserts that the defendants "willfully ... violated … the [FLSA] ... since at least November 2, 2006." Amended Complaint ¶ X. That allegation is wholly conclusory and therefore does not suffice, without more, to establish willfulness even in light of the defendants' default. *See, e.g., Holmes v. Air Line Pilots Ass'n, Intern.*, --- F.Supp.2d ----, 2010 WL 4025594, at *18-*19 & n.46 (E.D.N.Y. Oct. 12, 2010) (finding allegation of "willful misconduct" insufficient based on an analysis of Complaint's factual allegations); *Tracy v. NVR, Inc.*, 2009

WL 3153150, at *5 (W.D.N.Y. Sept. 30, 2009) (discussing failure to plead facts supporting conclusory allegation that individuals were "employers" under FLSA); *cf. Marcus v. American Contract Bridge League*, 254 F.R.D. 44, 48 (D. Conn. 2008) (finding complaint sufficient where it contained factual allegations explaining why the willfulness standard was met); *but see*, *e.g.*, *Dong v. CCW Fashion Inc.*, 2009 WL 884680, at *4 (S.D.N.Y. Feb. 19, 2009) (observing that the Complaint alleged that the defendants "willfully and intentionally" disregarded their obligations to pay the plaintiffs their wages and finding that "the defendants defaulted and therefore plaintiffs are entitled to ... a finding that the defendants' conduct was willful .... ") (citing *Boyke v. Superior Credit Corp.*, 2006 WL 3833544 (N.D.N.Y. Dec. 28, 2006)).

While the Secretary should not be penalized for failing to present information that the defendants' default made unavailable to her, she does have the ability to provide information about the employees' experiences to assist the court in determining if there is a sufficient basis for finding that the defendants acted willfully. In arguing that she had done just that at the inquest, the Secretary's counsel relied on three facts in the record. First, the Company Payroll omits employees and hours that the Hazell Logs include. Mem. at 17; Tr. at 97- 101. Second, credible testimony established that Muhleder admitted paying employees only $6.00 per hour for the first two weeks of their tenure, despite knowing that the state minimum hourly wage was $7.15. Mem. at 17. Moreover, the Company Payroll generally reflected hourly wage rates higher than $6.00, suggesting that Muhleder was deliberately concealing the unlawful underpayment. *Id.*; Tr. at 101-102. Third, the defendants did not pay employees anything at all for their last two weeks of employment if they did not provide two weeks' notice before quitting. Tr. at 103. For the reasons that follow, I find that none of these facts establishes willfulness.

First, while the Hazell Logs do indeed list employees and hours not listed in the Company Payroll, but the reverse is also true: the Company Payroll lists some employees and hours not reflected in the Hazell Logs. *See* Comparison Chart (comparing BX 7 at 7-9 to the Hazell Logs). Thus, the evidence supporting the Secretary's contention that the defendants intentionally undercounted some employees' hours is, at best from her perspective, in equipoise with the evidence that both Muhleder and Hazell both simply made errors in recording hours. The Secretary further argued that a comparison of the Company Payroll and the Hazell Logs revealed that the Company Payroll listed overtime less often, "usually only one or two [weeks], at most, during Christmas season." Tr. at 98-99. The evidence belies that claim. For example, it shows Singh, Ramdial, and Chaudhry all worked overtime during most of the weeks for which records were provided. *See* BX 5-7 (listing hours for Sonia Chaudhry); BX 7 at 1-5 (listing hours for Pamela Ramdial), 9-17 (listing hours for Sonia/Lilouti Singh). Moreover, if Muhleder intended to falsify records, it is unlikely she would have listed *any* overtime hours in the Company Payroll, since doing so would reveal the violations.[3] Accordingly, the discrepancies between the Hazell Logs and the Company Payroll do not prove the defendants' willfulness.

Second, the record with respect to Muhleder's admission to investigator Knudsen establishes no more than that, at the time of her interview, Muhleder was aware that her practice of paying employees sub-minimum wages for their first two weeks of work was unlawful; it does not establish when she engaged in that practice or at what point she knew of its unlawfulness. Knudsen testified that Muhleder made the admission in "late August" 2008. Tr. at 37. She did

---

[3] I hesitate to rely on the accuracy of employee Hazell's records. For example, Hazell initially claimed that Tally Young employees reported their lunch breaks to her each day. See Tr. at 7-8. However, when questioned further, she denied "really hav[ing] anything to do with the lunch hours." Tr. at 13. Further, Hazell was unable to explain clearly how she managed to record the actual time that employees working in multiple locations stopped working. Tr. at 15-18.

not say, and the Secretary did not elicit, whether she asked Muhleder to specify when she

became aware of the state law or when she engaged in the practice now at issue; if Knudsen did

question Muhleder on that score, neither her questions nor Muhleder's answers are reflected in

the record.

The timing of Muhleder's knowledge in this regard is critical because "for the purposes of

establishing the statute of limitations under the FLSA, a new cause of action accrues with each

payday following an allegedly unlawful pay period." *Hosking v. New World Mortg., Inc.*, 602 F.

Supp. 2d 441, 446 (E.D.N.Y. 2009) (citations and internal quotation marks omitted); *see also* 29

C.F.R. § 790.21(b) (Secretary's regulation providing same). Thus, the claims for any workweek

before November 4, 2007, are distinct from claims following that date – and the Secretary must

establish the defendant's willfulness at the time any such claim accrued in order to establish that

timeliness. Accordingly, the limited evidence of Muhleder's admission to Knudsen about the

state of her knowledge in August 2008 does not establish that she willfully violated federal wage

laws prior to November 4, 2007.

Finally, the Secretary asserts that the court can infer the defendants' willfulness from their

refusal to pay any wages at all to employees who failed to provide two weeks' notice before

leaving their jobs. Tr. at 103. The Secretary has adduced a factual basis from which to infer such

a practice: employee John testified that Muhleder withheld her final paycheck for precisely that

reason. Tr. at 32. But such testimony establishes no more than that Muhleder believed, however

unreasonably, that the lack of notice entitled her to withhold John's wages – it does not tend to

prove that Muhleder "either knew or showed reckless disregard for the matter of whether [her]

conduct was prohibited by the statute." *Richland Shoe*, 486 U.S. at 133. Even if it should have

been obvious to Muhleder that she was obliged to pay her employees for work already performed, that would not suffice: "'Should have known' implies a negligence or 'reasonable person' standard. Reckless disregard, in contrast, involves actual knowledge of a legal requirement, and deliberate disregard of the risk that one is in violation." *Damassia v. Duane Reade, Inc.*, 2005 WL 1214337, at *3 n. 2 (S.D.N.Y. May 20, 2005). The record does not contain any evidence that either defendant had such actual knowledge or turned a blind eye to it prior to November 4, 2007.[4] Accordingly, I respectfully recommend that the court dismiss as untimely the Secretary's claims for relief based on any work performed before November 7, 2007, including all work by Rodriguez, John's work from October 8 through November 4, 2007, and Chaudhry's work from August 20, 2006, through November 4, 2007.

      C.    <u>Damages</u>

            1.    <u>Applicable Law</u>

                  a.    <u>Regular Wages</u>

The FLSA prohibits covered employers from paying their employees less than the legally prescribed minimum wage for each hour worked. 29 U.S.C. §§ 206(a)(1), 215(a)(2). During the time period relevant to this case, the minimum wage was $5.85 per hour from July 24, 2007

---

[4] In other cases where the court found willfulness, the record included either direct or circumstantial evidence of the employer's knowledge or deliberate risk-taking with respect to its legal obligations. *See*, *e.g.*, *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 142 (2d Cir. 1999) (willfulness established where defendant was expert on FLSA and knew of his company's managers' previous pay-related violations but nonetheless relied on managers' assurances of legal compliance); *Chao v. Vidtape, Inc.*, 196 F. Supp. 2d 281, 295-96 (E.D.N.Y. 2002) (same where defendants told their employees to lie to Department of Labor about wages and hours worked, displayed poster notifying employees of rights under FLSA, and testified to having knowledge of minimum wage and overtime laws); *Moon v. Kwon*, 248 F. Supp. 2d 201, 231-32 (S.D.N.Y. 2002) (same where defendants testified they knew of minimum wage and overtime laws, consulted attorneys about those laws, knew plaintiff was not paid overtime, and knowingly paid employees off the books).

through July 23, 2008 and $6.55 per hour starting July 24, 2008. 29 U.S.C. § 206(a)(1).[5] Several

of Tally Young's employees received both a salary and commissions on their sales of products.

*See* Company Payroll; Tr. at 16, 29. For purposes of determining a violation of the minimum

wage provision, the court must assess whether the total amount paid, including both salary and

commissions, was less than the federal minimum wage. *See United States v. Klinghoffer Bros.*

*Realty Corp.*, 285 F.2d 487, 490 (2d Cir. 1960); *see also* DOL Wage-Hour Division's Field

Operations Handbook, § 30b02, *available at* http://www.dol.gov/whd/foh/FOH_Ch30.pdf (last

visited Mar. 4, 2011) ("In [non-overtime] [workweeks] or in [workweeks] in which the

[overtime] provisions do not apply, an employee subject to Section 6 of [the] FLSA is considered

to be paid in compliance if the overall earnings for the [workweek] equal or exceed the amount

due at the applicable [minimum wage]. This is true regardless of whether the employee is paid

on the basis of a single hourly rate, different hourly rates, commissions, ... or some combination

of these methods.").

b.    Overtime Wages

The law requires the defendants to pay employees a 50 percent premium for their

overtime hours – that is, the hours in excess of 40 that he worked in each workweek. *See* 29

C.F.R. § 778.105. For each week an employee worked more than 40 hours, she is entitled to

overtime wages. *See* 29 U.S.C. § 207(a)(1).

In calculating overtime pay owed under the FLSA, the court must first determine the

employee's regular rate of pay for the relevant periods. *See id.* The regular rate is the hourly rate

paid to the employee for a typical week. *See* 29 U.S.C. § 207(e); *Walling v. Youngerman-*

*Reynolds Hardwood Co.*, 325 U.S. 419, 424 (1945). For those employees earning a weekly,

---

[5] The hourly minimum wage for all relevant times prior to July 24, 2007, was $5.15.

rather than hourly, wage, that rate is calculated by dividing weekly compensation by the number

of hours for which that compensation is intended. 29 C.F.R. § 778.112; *see also Yang*, 427 F.

Supp. 2d at 338 (citing *Moon*, 248 F. Supp. 2d at 230). The governing regulations provide that

commissions are considered payment for hours worked and must be included when calculating

the regular rate, regardless of whether the commissions are paid weekly or on a less frequent

basis. 29 C.F.R. § 778.117; *see e.g.*, *Donovan v. Grantham*, 690 F.2d 453, 457 (5th Cir. 1982)

(describing failure to include commissions when calculating overtime pay as "violation of the

department regulations defining 'regular' and overtime pay" (citing 29 C.F.R. § 778.117));

*Powers v. Centennial Commc'ns. Corp.*, 679 F. Supp. 2d 918, 921 (N.D. Ind. 2009)

("[C]omissions are to be included in [the] regular rate."), *amended in part on other grounds*,

2010 WL 746776 (N.D. Ind. Feb. 26, 2010).

When the result of dividing the week's compensation by the weekly hours is less than the

applicable state minimum wage rate of $7.15, the governing federal regulations require that

straight time be compensated at the state minimum wage rate. *See, e.g.*, *Pereira v. J. Sisters Hair

Care Prods., Inc.*, 2010 WL 2194807, at *1 & n.1 (S.D.N.Y. June 1, 2010) (citing 29 C.F.R.

§ 778.5 ("Where a higher minimum wage than that set in the Fair Labor Standards Act is

applicable … by virtue of such other legislation, the regular rate of the employee … cannot be

lower than such applicable minimum, for the words 'regular rate at which he is employed' as used

in section 7 must be construed to mean the regular rate at which he is lawfully employed."));

*Mendez v. Nooch, Inc.*, 2009 WL 666771, *2, *4 (S.D.N.Y. Mar. 6, 2009) (same); *see also* 29

C.F.R. § 778.315 (providing that, under the FLSA, overtime compensation cannot be considered

paid "unless all the straight time compensation due [to an employee] for the nonovertime hours ... under *any* applicable statute has been paid") (emphasis added).

### 2.  The Secretary's Calculations And Data

In her first cause of action, the Secretary seeks payment for failure to pay regular wages in compliance with Section 6 of the FLSA. Amended Complaint ¶ VIII. She asserts that the defendants committed two types of violations: "failing to pay [employees] their final paychecks when they left without giving at least two-weeks [sic] notice, and, from July 24, 2008 onward, ... paying some employees less than the applicable $6.55 minimum wage." Mem. at 15. For example, the Secretary shows that, for the week of February 18-24, 2008, Reid worked 30 hours and was paid nothing, in violation of the FLSA's requirement at that time that employees be paid $5.85 per hour. She therefore claims damages of $5.85 per hour times 30 hours, or $175.50. Computations Chart at 10, row 79. Similarly, she shows that, for four weeks – from Monday, July 21 through Sunday, August 17, 2008 – Abdoul worked 16 hours per week and was paid $6.00 per hour, or $0.55 per hour less than the then-prevailing federal minimum wage rate. Computations Chart at 2, rows 101-04. The Secretary therefore claims damages of $0.55 per hour times 16 hours per week times four weeks, for a total of $35.20. *Id.*

In her second cause of action, the Secretary seeks payment for failure to pay overtime wages in compliance with Section 7 of the FLSA. Amended Complaint ¶ IX. She claims that, in weeks where employees worked more than 40 hours, the defendants failed to pay time-and-a-half for the overtime hours. She further claims that the defendants sometimes paid the first 40 hours in an overtime week at less than the state minimum wage rate, in violation of 29 C.F.R. § 778.5. For example, the Secretary claims that, for the week of November 6-12, 2006, the Company

Payroll shows that Chaudhry worked 43.5 hours and earned commissions and that the defendants paid her $13 per hour for all 43.5 hours worked, or $565.50, plus her commission of $106.98, for total compensation of $672.48. The Secretary claims that the FLSA requires that Chaudhry's regular rate include the commissions she earned, and thus should have been calculated by dividing the $672.48 total compensation she was paid by the 43.5 total hours she worked, resulting in a regular rate of $15.46 per hour. The Secretary then calculated the overtime premium on that regular rate by dividing $15.46 in half to arrive at $7.725 per hour, and then she multiplied that hourly premium by the 3.5 hours of overtime Chaudhry worked, arriving at a total of $27.05 in additional compensation due. Mem. at 10; Computations Chart at 25, row 12.

Similarly, for the week of June 30 through July 6, 2008, the Secretary claims Gillespie worked 81 hours but that the Company Payroll indicates the defendants paid Gillespie $208.00 per week, or $2.57 per hour, and no commission. *Id.* at 24, row 98.[6] In calculating the amount owed for each week, the Secretary set the regular rate at $7.15 per hour, the state minimum wage rate that applies under 29 C.F.R. § 778.5, to straight time worked in overtime weeks (if the regular rate is less than $7.15 per hour). She then calculates that Gillespie should have been paid $7.15 per hour for the first 40 hours she worked each week, plus $10.725 per hour (50 percent above the regular hourly rate of $7.15) for the 31 overtime hours she worked, for a total of

---

[6] While the Secretary obtained the amount paid from the Company Payroll, she did not draw the number of hours worked from that record. The Company Payroll indicates that Diamond Gillespie worked only 26 hours for the week of June 30 through July 6, 2008. BX 7 at 14. As explained above, Knudsen testified to having based the Computations Chart on multiple sources, including not just the Company Payroll but also her interviews of Tally Young employees.

$725.73 for the week. *Id.*[7] From that amount, she deducts the $208.00 that the Company Payroll indicates the defendants paid to Gillespie, for total damages of $517.73 for the week.

I pause to examine the sources of the hours and wage information the Secretary used in calculating damages based on her investigation of the defendants. Knudsen explained that her investigation entailed "a review of the Defendant's records, statements obtained from Defendants' employees, interviews with Defendant Margaret Muhleder and the obtaining of other relevant information[.]" Knudsen Dec. ¶ 5. At the inquest, Knudsen testified that she had met with Muhleder on two occasions during the course of the investigation, the first time being in late August of 2008. Tr. at 36-37. On the second visit, Muhleder provided Knudsen with the Company Payroll and the Paychecks. *Id.* at 38-39. Additionally, Knudsen visited with Tally Young employees on three occasions, at a spa and salon on Flatbush Avenue in Brooklyn, and also at kiosks operated by the defendants at local malls. *Id.* at 59-60. Knudsen spoke with and observed "one or two" employees on each visit. *Id.* at 60. Knudsen used the evidence obtained in her investigation to calculate the damages the Secretary now claims. *See* Knudsen Dec. ¶¶ 5-8; Tr. at 65-66, 69, 75; Computations Chart.[8]

Much of the data that appear in the Computations Chart come from the Company Payroll. *Compare, e.g.*, BX 6 at 13-17 & BX 7 at 1-17 (listing Sonia Chaudhry's hours) *with*

---

[7] My understanding of the Secretary's calculations is necessarily a matter of inference, as neither her memorandum of law nor her Computations Chart provides any explanation for either the series of columns used to calculate damages or the formulas used to obtain the amounts of regular and overtime wages.

[8] Knudsen also obtained records from Hazell that purportedly reflected employees' work hours from March 24 through May 4, 2008. Tr. at 39; Hazell Logs. It does not appear, however, that Knudsen used Hazell's data in compiling the Computations Chart. *Compare, e.g.*, Hazell Logs at 1 (indicating Sonia Chaudhry worked 46 and 48 hours, respectively, for the two weeks from March 24 - April 6, 2008) *with* Computations Chart at (claiming Chaudhry worked 55 and 40 hours, respectively, in those two weeks).

Computations Chart at 26, rows 64-104 (listing same hours). Upon review of the Company

Payroll, however, I have found that it contains several internal inconsistencies. For example, the

number of total weekly hours listed sometimes varies from the sum of the daily hours listed –

and the variance does not consistently favor either side. *See, e.g.*, BX 6 at 16 (listing weekly

hours of 31 for Donique Grace for December 17-23, 2007, but daily hours that total 35); BX 7 at

13 (listing weekly hours of 37.5 for Chryssy Abdoul for June 23-29, 2008, but daily hours that

total 31.5). Similarly, the field showing total payment owed sometimes varies from the

calculated total owed based on the listed salary and commission, again in both directions. *See,

e.g.*, BX 7 at 5 (listing salary of $400 and commission of $86.46 for Zahida Khan for February

25 through March 2, 2008, and amount due of only $400); *id.* at 6 (listing salary of $500 and no

commission for Ruth Hazell for March 17-23, 2008, but amount due of $550).

      While the Company Payroll is thus plainly not accurate reliable in all respects, I conclude

that the information it reports may be used to calculate damages. The FLSA permits such an

award "'even though [it is] ... only approximate.'" *S. New England Telecomms.*, 121 F.3d at 67

(quoting *Mt. Clemens*, 328 U.S. at 687-88); *see Arias v. U.S. Serv. Indus., Inc.*, 80 F.3d 509, 511,

512-13 (D.C. Cir. 1996) (approving damages calculations that included estimates of missing data

on hours worked, based on existing data on payments and wage rate, and estimates on allocating

unmarked checks that was based on incomplete information about company pay practices).

Accordingly, in calculating below the hours worked and wages paid for all employees other than

Hazell and John, I rely on the total hours field in the Company Payroll and the copies of checks

Muhleder provided. To determine which payments corresponded to certain workweeks, I

matched the date of the check to the date of the workweek and, where possible, also compared

the amounts of the checks, which were generally paid biweekly, to the sum of the "Ch[ec]k A[mou]nt" column in the Company Payroll. To the extent reliance on the Company Payroll produces a damages award that is not entirely precise, the defendants – who did not, in any event, take advantage of their opportunity to participate in the inquest – "cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had [they] kept records in accordance with" the FLSA. *Mt. Clemens*, 328 U.S. at 688.

Notwithstanding my willingness to rely on the Company Payroll and to embrace certain aspects of the Secretary's calculations, I note the following two problems in that regard. First, the Secretary's calculations regarding Hazell and John are based on assumptions at odds with the employees' own recollections. *Compare* Computations Chart at 16, 18 (reflecting average work weeks for Hazell and John of 65 and 50 hours, respectively) *with* Tr. at 5, 8-9 (showing that Hazell worked an average of 63 hours per week), *and* Tr. at 28-29 (showing that John worked 40 hours per week, with the exception of two 50-hour weeks in December 2007).

Second, the Secretary did not base her damages calculations on the amounts actually paid to employees as reflected in the Paychecks that Muhleder provided to Knudsen as part of the Secretary's investigation – that is, copies of cancelled checks showing amounts actually received by Tally Young employees. When questioned about that fact, Knudsen stated that the cancelled checks are not dispositive of the amounts Tally Young employees were paid; instead, she simply used them to determine *whether* each employee was paid for a given time period and ignored the amount listed on the check. *See* Tr. at 77. Despite my attempts to gain clarity about her approach, Knudsen was unable to explain just how she determined the payment amounts set forth in the Computations Chart, and ultimately acknowledged that the latter document is not a reliable tool

for determining such amounts. Tr. at 77-79. The Secretary's counsel was similarly unable to explain the source of the Computations Chart's figures for amounts paid, but nevertheless endorsed the exhibit because those amounts "almost" equal the amounts in the checks. Tr. at 81.[9]

Based on my own review of the record, I infer what Knudsen and the Secretary's counsel did not explain: it appears that for most employees, the source of the payment amounts in the Computations Chart is the corresponding information from the Company Payroll. *Compare, e.g.*, Computations Chart at 10, lines 86-87 ("Paid" column showing $350.00 per week for Janet-Sofria Reid), *with* BX 7 at 17 (showing "Ch[ec]k Am[ou]nt" of $350.00 per week for Janet).[10] Drawing payment information from the Company Payroll is incorrect, since the regular rate must be calculated using the amount "actually paid," *Walling*, 325 U.S. at 624, *accord* 29 C.F.R. § 778.108. While in most weeks the amounts listed as paid in the Company Payroll matched the actual payments by check, in some weeks the figures do not agree. *Compare, e.g.*, BX 7 at 7 (showing Ruth Hazell was paid $400 for March 24-30, 2008, and $520 for March 31 through April 6, 2008, or a total of $920) *with* BX 10 at 81 (showing defendants issued a check to Hazell for $1,040 on April 10, 2008).

### 3. Adjusted Damages Calculations

As a result of my determination that the Secretary has not demonstrated that the defendants acted willfully, and of the shortcomings of the Secretary's data compilations and

---

[9] I do not mean to suggest that the discrepancies reflect any deliberate effort to inflate the damages award; I note them only to explain why the court should hesitate in accepting the Secretary's information as reliable in certain respects.

[10] For the rest of the employees, Knudsen appears to have drawn the amount paid from interviews with the employees. *See, e.g.*, Computations Chart at 2, lines 101-04 ("Paid" amount for Abdoul of $96.00 equals "Wages Paid in Total" of $6.00 multiplied by "Hrs Wk" of 16); Tr. at 64-65 (Knudsen testifying that she obtained this information from interviewing Abdoul).

damages calculations described above, I do not endorse the Secretary's requests for damages. Instead, I calculate damages independently, as set forth below.

a.   Claims Beyond Limitations Period

The Secretary requests damages in the amount of $27,744.14 in unpaid wages and overtime for workweeks dating from November 6, 2006. BX 12; BX 13 at 25. That amount includes claims that accrued before November 4, 2007, which are outside of the applicable two-year limitations period and therefore must be excluded.[11]

b.   Hazell And John

There are three conflicting sources of information concerning the hours that employees Hazell and John worked as well as the amounts they were paid: the Secretary's assumptions, as reflected in the Calculations Chart; Tally Young's report, as reflected in the Company Payroll records that Muhleder provided to Knudsen; and the employees' own testimony at the inquest. Where the various sources of information conflict with respect to the hours worked, I rely on the

---

[11] To the extent the court disagrees with my recommendation to deny the request for damages before November 4, 2007, I note that the damages the Secretary requested in Biklen's declaration and the Computations Chart exceed the figure in the Proposed Order the Secretary had served on the defendants with her motion for default judgment, in which she sought to recover wages and overtime for workweeks dating only as far back as September 27, 2007, in an amount of only $23,340.14. Proposed Order ¶ 4. This inconsistency should not be deemed an abandonment on the part of Secretary's claims based on workweeks before September 27, 2007. The Clerk had already noted the defendants' default on March 16, 2010, *see* DE 8, more than a week *before* the Secretary submitted the Proposed Order reducing the earlier request for damages, which had been based on workweeks dating back to November 6, 2006, *see* DE 9. Thus, any decision by the defendants to default was based on an assessment of liability for workweeks dating from November 2006, as was also asserted in the Amended Complaint, *see* Amended Complaint ¶ X, and the defendants cannot now be heard to complain that they chose to default based only on the more circumscribed claim in the Proposed Order. *See Am. Home Mortgage Corp. v. America's Choice Mktg., Inc.*, 2008 WL 919598, at *1 (E.D.N.Y. Mar. 20, 2008) (deeming abandoned a claim for attorneys' fees included in complaint but omitted from proposed default judgment); *see also Trs. of Plumbers Local Union No. 1 Welfare Fund v. Generation II Plumbing & Heating, Inc.*, 2009 WL 3188303, at *3 n.1 (E.D.N.Y. Oct. 1, 2009) (same for claims for contributions and court-ordered audit included in complaint but omitted from default motion).

employees' testimony because, in an action for wages under the FLSA, "in the absence of rebuttal by defendants, plaintiffs' recollection and estimates of hours worked are presumed to be correct." *Zeng Liu v. Jen Chu Fashion Corp.*, 2004 WL 33412, at \*3 (S.D.N.Y. Jan. 7, 2004); *accord Chao v. Vidtap*, 196 F. Supp. 2d 281, 293-94 (E.D.N.Y. 2002) (finding plaintiff's testimony to be sufficient to establish unpaid wages). Where the employees' testimony does not provide all of the information necessary to calculate their hours, I credit the Secretary's reasonable assumptions. However, with respect to the amounts actually paid, under the circumstances of this case I resolve conflicts by relying on the Paychecks that Muhleder provided to Knudsen. Those records show actual cancelled checks that are demonstrably more reliable in some instances than the employees' recollections or the Secretary's assumptions.

Hazell testified that she worked for Tally Young from March through May of 2008, without specifying the start or end dates of her employment. Tr. at 5. The Secretary seeks damages for the eight weeks from March 10 through May 4, 2008, *see* Computations Chart at 18, and that estimate seems reasonable. Hazell testified that she worked 10 to 11 hours per day, six days per week, which amounts to an average of 63 hours per week. *See* Tr. at 8-9; *but see*, *e.g.*, BX 7 at 7 (40 hours). Hazell also testified that she was paid $8.00 per hour except for her final two weeks at Tally Young, when she was paid nothing for her work. Tr. at 10-11. Where that testimony is at odds with the Paychecks, I credit the latter and divide the amount of each bi-weekly paycheck in half to determine the amounts paid to Hazell on a weekly basis, as reflected in the Appendix.

John testified that she worked from October 2007 through January 2008. Tr. at 20. Like Hazell, she did not provide precise start and end dates for her employment. I note, however, that

any employment in October 2007 is outside of the applicable limitations period. As for the end date, the Secretary seeks damages only through January 13, 2008, *see* Computations Chart at 16, and that estimate seems reasonable. During the period of her employment, John credibly recalled having usually worked 40 hours per week, with the exception of two weeks "around Christmastime" during each of which she worked 50 hours. Tr. at 28; *but see*, *e.g.*, BX 6 at 13 (25 hours).[12] John testified that she received no pay at all for her final two weeks but otherwise was paid $6.00 per hour for her work, plus commissions. Tr. at 28-29.[13] For the reasons set forth above, I do not base my calculations on that amount, but instead rely on the amounts of the cancelled checks that Muhleder provided to Knudsen, as reflected in the Appendix.

### c.     Amounts Actually Paid

Under *Walling*, 325 U.S. at 624, and 29 C.F.R. § 778.108, the regular rate used to calculate damages must be based on amounts the employer "actually paid." To correct for the Secretary's failure to use the actual payments, I have had to recreate her calculations. I first matched the Paychecks to workweeks in the Company Payroll by comparing the dates and amounts to find the closest match. I then allocated the amounts in the Paychecks – which cover biweekly periods – proportionately to each workweek, based either on the amounts listed as the

---

[12] At other points in her testimony, John claimed to have worked longer hours. *See* Tr. at 26-27. Given her demeanor, I conclude that John believed all of her testimony and did her best to make accurate, if not always consistent, estimates. Because her lower estimates rebut the higher ones, I rely on the former in calculating the damages that have been proved to a reasonable certainty.

[13] John believed that her compensation was less than the minimum wage. Tr. at 30. The checks Muhleder submitted show that John was indeed paid less than minimum wage for two weeks, October 8-14, 2007 (when she received $114, or $2.85 per hour for 40 hours, which is less than the then-prevailing federal minimum wage of $5.85) and October 22-28, 2007 (when she received approximately $218, or $5.45 per hour for 40 hours). As explained above, those weeks are not within the applicable limitations period. In all other weeks where John was paid, dividing the amounts of the Paychecks made out to John by the hours she claimed to have worked – 40 hours per week in most weeks and 50 hours per week in the two weeks around Christmas 2007 – reveals that in fact she received more than the federal minimum wage. *See* Appendix.

"Ch[ec]k Am[oun]t" (i.e., the amount purportedly paid) in the Company Payroll, or where those data were unavailable, on the number of hours worked each week.[14] I then divided that weekly payment by the numbers of hours Knudsen reported for each employee for each workweek – with the exception of John and Hazell, whose hours I adjusted according to their testimony, as explained above, to arrive at the paid rate.

For example, for Chaudhry, for the two weeks ending, respectively, on February 17 and 24, 2008, the Company Payroll lists check amounts of $875.00 and $1,054.72, respectively, for a total of $1,929.72 for the two-week period. However, the single actual cancelled check for the two-week period reflects a lower total: $1,737.34. Accordingly, to determine the amount actually paid to Chaudhry for the first of those weeks, I use the weekly amounts in the Company Payroll to calculate the pro rata share of the bi-weekly check to be applied to each week. In other words, the $875.00 listed in the payroll may be overstated, but it appears to reflect that of the two weeks for which Chaudhry was actually paid $1,727.34, approximately 45.3 percent ($875.00 divided by $1,929.72) was paid for hours worked in the first of the two weeks covered by the check. Using that methodology produces an actual weekly pay of $787.77 for the week ending February 17, 2008. I then divided that amount by the 55 hours Chaudhry worked to arrive at her pay rate of $14.32.

| Week Ending | Hours | Payroll "Check Amount" | Paycheck Date | Paycheck Amount | Actual Weekly Pay | Paid Rate |
|---|---|---|---|---|---|---|
| 2/17/08 | 55 | $857.00 | | | $787.77 | $14.32 |
| 2/24/08 | 58 | $1,054.72 | 3/1/08 | $1,737.34 | $949.57 | $16.37 |

---

[14] Where John was paid $720.39 for a two-week period in which she worked 40 hours the first week and 50 hours the next, I pro-rated credit for that payment accordingly.

As another example, in the week ending April 27, 2008, there was no Paycheck for Chaudhry and no Company Payroll data for amounts purportedly paid to her, but the Secretary's Computations indicated she had been paid $1,200.00 for that week and the following week and had worked 50 hours in each week. Accordingly, I credited the defendants with that payment and merely divided the payment in half based on the equal number of hours worked in each week during the pay period.

| Week Ending | Hours | Payroll "Check Amount" | Paycheck Date | Paycheck Amount | Actual Weekly Pay | Paid Rate |
|---|---|---|---|---|---|---|
| 4/27/08 | 50 | | | | $600.00 | $12.00 |
| 5/4/08 | 50 | | | $1,200.00 | $600.00 | $12.00 |

Next, I determined the wage rates to apply in overtime workweeks as follows. First, I took the greater of the hourly rate the defendants actually paid, as calculated in the preceding paragraphs, and in each week I compared it to the prevailing state minimum wage rate. I applied the greater of those two rates to all regular (non-overtime) hours, pursuant to 29 C.F.R. § 778.5. I then multiplied that rate by 1.5 to obtain the wage rate due for all overtime hours worked. I then multiplied the straight time rate by the 40 regular hours worked in an overtime workweek, and I multiplied the overtime rate by the number of overtime hours worked, and summed those two products to obtain the total earned. I then subtracted the actual weekly pay from the total earned to obtain the total damages owed for the week. For example, in mid-March 2008, Reid was paid less than the state minimum wage; I therefore applied that minimum wage as the regular rate and calculated her damages as follows:

| Week Ending | Hrs. | Actual Weekly Pay | Paid Rate | NYS Min. Wage | Reg. Rate | OT Rate | ST Earned | OT Earned | Total Earned | Total Owed |
|---|---|---|---|---|---|---|---|---|---|---|
| 3/16/08 | 45 | $300.00 | $6.67 | $7.15 | $7.15 | $10.73 | $286.00 | $53.63 | $339.63 | $39.63 |
| 3/23/08 | 45 | $201.00 | $4.47 | $7.15 | $7.15 | $10.73 | $286.00 | $53.63 | $339.63 | $138.63 |

To take a contrasting example, Chaudhry received more than the state minimum wage in mid-February 2008; the regular rate was thus the hourly rate she was actually paid, and I calculated her damages for those weeks as follows:

| Week Ending | Hrs. | Actual Weekly Pay | Paid Rate | NYS Min. Wage | Reg. Rate | OT Rate | ST Earned | OT Earned | Total Earned | Total Owed |
|---|---|---|---|---|---|---|---|---|---|---|
| 2/17/08 | 55 | $787.77 | $14.32 | $7.15 | $14.32 | $21.48 | $572.92 | $322.27 | $895.19 | $107.42 |
| 2/24/08 | 58 | $949.57 | $16.37 | $7.15 | $16.37 | $24.56 | $654.88 | $442.04 | $1,096.92 | $147.35 |

A complete set of tables of my calculations is attached as an appendix to this report. Performing the calculations described therein yielded the following damages:

| Employee | Total Owed |
|---|---|
| Abdoul | $35.20 |
| Chaudhry | $4,360.41 |
| Gillespie | $1,949.15 |
| Grace | $1,871.23 |
| Harris | $1,167.54 |
| Hazell | $2,508.65 |
| John | $552.97 |
| Kahn | $1,944.22 |
| Ramdial | $594.65 |
| Reid | $1,347.75 |
| Singh | $933.70 |
| Topey | $100.95 |
| **Total** | **$17,366.41** |

Accordingly, I respectfully recommend that the court award damages of $17,366.41.

5.  Liquidated Damages

The FLSA provides for an additional award of liquidated damages to a plaintiff who establishes that his employer has failed to pay required wages. Specifically, an employer who violates the FLSA "shall be liable" to employees for both unpaid minimum wages and unpaid

overtime in "an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).[15] Having

found that the Secretary has established unpaid minimum wages and overtime of $17,366.41, I

respectfully recommend that the court award an additional $17,366.41 in liquidated damages.

      D.      <u>Abandoned Requests For Relief</u>

The Secretary requested additional relief in her Amended Complaint, specifically costs

and, in the event the court did not award liquidated damages, prejudgment interest. Amended

Complaint at 4-5 (prayer for relief ¶¶ (4)-(5)). When the Secretary served her default motion

papers on the defendants, however, she included a proposed default judgment that omitted any

mention of these other forms of relief. Proposed Order. As a result, the defendants may have

made the decision not to contest the motion in reliance on the relief set forth in the judgment that

the Secretary asked the court to enter. For that reason, I recommend against any award that

exceeds the terms of the Proposed Order. *See Am. Home Mortgage Corp.*, 2008 WL 919598, at

*1 (deeming abandoned a claim for attorneys' fees included in complaint but omitted from

proposed default judgment); *see also Generation II Plumbing & Heating, Inc.*, 2009 WL

3188303, at *3 n.1 (same for claims for contributions and court-ordered audit included in

complaint but omitted from default motion).

In any event, the Secretary requested prejudgment interest only in the event liquidated

damages were not awarded, Amended Complaint ¶¶ VIII-IX, and the recommended award here

includes liquidated damages. Moreover, although the FLSA provides for an award of costs, *see*

---

[15] While an award of liquidated damages is the norm, the FLSA provides that a court, in its
discretion, may deny liquidated damages if the employer "shows to the satisfaction of the court
that the act or omission giving rise to such action was in good faith[.]" 29 U.S.C. § 260. It is the
employer's burden to establish such good faith by "plain and substantial evidence." *S. New
England Telecomms.*, 121 F.3d at 71 (internal citations omitted). Where, as here, a defendant
employer has defaulted, the court plainly cannot find that it has made the showing of good faith
necessary to defeat an award of liquidated damages.

29 U.S.C. § 216(b), the Secretary has provided no evidence of any costs, despite being given ample opportunity to do so and clear warning that failure to submit evidence would foreclose the possibility of such recovery. *See* Order dated March 29, 2010.

    E.    <u>Injunctive Relief</u>

The Secretary also seeks injunctive relief pursuant to Section 17 of the FLSA. Amended Complaint at 4 (prayer for relief ¶ 1); Proposed Order ¶¶ 1-6, 8-9. Specifically, she asks the court to enjoin the defendants from future violations of minimum wage and overtime as well as record-keeping requirements under the FLSA and Department of Labor regulations, and from failing to pay the amounts awarded in back wages and liquidated damages as part of the court's judgment. Proposed Order ¶¶ 1-5, 8. Additionally, the Secretary asks the court to order the defendants to produce within 30 days of judgment the names, contact information, and employment and payment records for all employees of Tally Young from November 4, 2006, through the date of judgment and seeks to retain for 18 months the option to petition the court for further damages based on any newly provided records. *Id.* ¶¶ 9-10.[16]

    1.    <u>Future Violations</u>

"Section 17 of the FLSA, 29 U.S.C. § 217, grants district courts broad equitable powers to restrain violations of section 15," including the provision of injunctions against future violations. *Brock v. Casey Truck Sales, Inc.*, 839 F.2d 872, 879 (2d Cir. 1988) (noting that relief will "ordinarily" include an order "enjoining future violations"); *Vidtape*, 196 F. Supp. 2d at 298 (E.D.N.Y. 2002) (enjoining future Section 15 violations). In applying that standard to determine

---

[16] Specifically, the Secretary seeks "attendance records, logs, and sign-in sheets, and records indicating hours worked on a daily, weekly and/or bi-weekly period and any and all documents concerning the wages paid to all of Defendants' employees on a weekly, bi-weekly or other basis as well as the wage rates." Proposed Order ¶ 9.

whether to issue an injunction against future violations, courts have considered an employer's previous conduct and promises of future compliance. *See Vidtape*, 196 F. Supp. 2d at 298 (granting a prospective injunction upon finding that violations were willful); *Reich v. Waldbaum, Inc.*, 833 F. Supp. 1037, 1052 (S.D.N.Y. 1993) (granting prospective injunction where Secretary had investigated employer eight times in 30 years and employer failed to cooperate in instant investigation), *rev'd in part on other grounds*, 52 F.3d 35 (2d Cir. 1995); *but see Kaszycki & Sons*, 599 F. Supp. at 871-72 (finding injunction against future violations warranted solely on the grounds of a violation of Section 15).

The defendants' conduct in this case does not approach the level of recalcitrance that would justify an injunction against future violations. Unlike in *Vidtape*, I conclude for reasons discussed above that the evidence does not establish that the defendants acted willfully in underpaying their employees. Even if the court disagrees with that conclusion, the record still demonstrates that Muhleder initially cooperated with the Secretary's investigation, by answering Knudsen's questions and turning over Tally Young's records, including the Company Payroll, which listed employees' schedules and pay, and the Paychecks. Tr. at 37-39. That conduct distinguishes the instant case from *Waldbaum*. To be sure, the defendants defaulted rather than make any effort to come into compliance with the FLSA after the lawsuit was filed, but that alone does not demonstrate a likelihood of future disobedience of the law. I therefore conclude that an injunction against all future violations of Section 15 would be inappropriate at this time.

## 2.   Withholding Of Award

By contrast, I find that an injunction restraining the defendants from withholding the award of minimum wage and overtime compensation is warranted, since such relief is plainly

contemplated by Section 17. *See* 29 U.S.C. § 217 (authorizing "the restraint of any withholding of payment of minimum wages or overtime compensation found by the court to be due to employees"). However, Section 17 does not provide for injunctions related to the payment of liquidated damages. Indeed, the legal remedy of liquidated damages, authorized under Section 16 of the FLSA, has been distinguished from the equitable remedy of an injunction to require payment of back wages under Section 17. *See Brock*, 839 F.2d at 879.

### 3. Contact Information And Additional Records

I further conclude that it would be appropriate to require the defendants to produce contact information and records for all employees and to permit a future claim for additional damages. Although the Secretary provided no support for this part of her request, in violation of this court's rules, *see* Local Civ. R. 7.1(a), I note, as did the court in *Brock*, the FLSA's grant of "broad equitable powers" to prevent violations. In an analogous context, where the Employee Retirement Income Security Act of 1974 ("ERISA") provides courts with broad discretion to fashion equitable relief, courts often compel defaulting defendants to submit to contractually-authorized audits of their records and permit plaintiffs to petition the court for further damages based on those audits. *See e.g.*, *LaBarbera v. J & A Concrete Corp.*, 2008 WL 918259, at *12 (E.D.N.Y. Feb. 22, 2008) (collecting cases), *adopted in relevant part*, 2008 WL 918244 (E.D.N.Y. Apr. 1, 2008). While Tally Young is not under a *contractual* obligation to submit to any audit by the Secretary, as in ERISA cases, the FLSA requires employers to make and maintain records and to make those records available to the Secretary's investigators. Specifically, the law requires that an employer maintain records

> of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him, and shall preserve such records for

such periods of time, and shall make such reports therefrom to the Administrator as he shall prescribe by regulation or order[.]

29 U.S.C. § 211(c).

Additionally, it provides for inspection of such records as follows:

The Administrator or his designated representatives may investigate and gather data regarding the wages, hours, and other conditions and practices of employment ... , and may ... inspect ... such records ... and investigate such facts, conditions, practices, or matters as he may deem necessary or appropriate to determine whether any person has violated any provision of this Act[.]

*Id.* § 211(a).

Because those provisions together guarantee the Secretary's access to employer records to prevent violations of wage and overtime rules, I conclude that an order to produce additional records would be appropriate here. Considering, however, that the Company Payroll and the Paychecks Muhleder provided to Knudsen already include the requested records for November 2006 through August 2008 (with the exception of a gap in the Company Payroll from mid-December 2006 through March 2007), I find that the Secretary has demonstrated a need only for the Company Payroll records for that gap and for the payroll data and payment information from September 2008 through the date of judgment.

4.     Summary

In sum, I respectfully recommend that the court grant the Secretary's request for an injunction restraining the defendants from withholding the award of minimum wage and overtime compensation and requiring them to produce, within 30 days of the court's judgment, the contact information for all employees who worked at Tally Young from November 2006 through the date of judgment and the requested employment records from September 2008 through the date of judgment. I further recommend that the court deny the Secretary's request for

an order enjoining the defendants from withholding liquidated damages and from any future violations of the record-keeping and wage and overtime requirements.

III.    Recommendation

For the reasons set forth above, I respectfully recommend that the court award judgment in the total amount of $34,732.82 (consisting of $17,366.41 in unpaid wages and overtime and $17,366.41 in liquidated damages); enjoin the defendants from withholding the damages award; and require them to produce within 30 days of judgment contact information for all employees who worked at Tally Young after November 2006 as well as employment records from September 2008; permit the Secretary to seek a supplemental award on the basis of such information; and deny the remainder of the Secretary's requests for relief.

IV.    Objections

I direct the plaintiff to serve a copy of this Report and Recommendation on each defendant by certified mail, and to file proof of service no later than March 9, 2011. Any objections to this Report and Recommendation must be filed no later than March 23, 2011. Failure to file objections within this period designating the particular issues to be reviewed waives the right to appeal the district court's order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).

**SO ORDERED.**

Dated:  Brooklyn, New York
        March 4, 2011

                                                        /s/ James Orenstein
                                                        JAMES ORENSTEIN
                                                        U.S. Magistrate Judge

# APPENDIX

| Employee | Week Ending | Hrs | "Check Amt." | Paycheck Date | Paycheck Amount | Actual Weekly Pay | Paid Rate | Fed. Min. Wage | NYS Min. Wage | Reg. Rate | OT Rate | ST Wages Earned | OT Wages Earned | Total Earned | Total Owed |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Abdoul | 7/27/08 | 16 | | | | $ 96.00 | $ 6.00 | $ 6.55 | $ 7.15 | $ 6.55 | N/A | $ 104.80 | N/A | $ 104.80 | $ 8.80 |
| Abdoul | 8/3/08 | 16 | | | | $ 96.00 | $ 6.00 | $ 6.55 | $ 7.15 | $ 6.55 | N/A | $ 104.80 | N/A | $ 104.80 | $ 8.80 |
| Abdoul | 8/10/08 | 16 | | | | $ 96.00 | $ 6.00 | $ 6.55 | $ 7.15 | $ 6.55 | N/A | $ 104.80 | N/A | $ 104.80 | $ 8.80 |
| Abdoul | 8/17/08 | 16 | | | | $ 96.00 | $ 6.00 | $ 6.55 | $ 7.15 | $ 6.55 | N/A | $ 104.80 | N/A | $ 104.80 | $ 8.80 |
| **Total** | | | | | | | | | | | | | | | $ 35.20 |
| Topey | 3/2/08 | 55 | $ 385.00 | | | $ 411.67 | $ 7.48 | $ 5.85 | $ 7.15 | $ 7.48 | $ 11.23 | $ 299.40 | $ 168.41 | $ 467.81 | $ 56.14 |
| Topey | 3/9/08 | 40 | $ 373.01 | 3/17/08 | $ 810.52 | No damages claimed for this workweek | | | | | | | | | |
| Topey | 3/16/08 | 41 | $ 307.50 | | | $ 308.00 | $ 7.51 | $ 5.85 | $ 7.15 | $ 7.51 | $ 11.27 | $ 300.49 | $ 11.27 | $ 311.76 | $ 3.76 |
| Topey | 3/23/08 | 41 | $ 307.50 | 3/28/08 | $ 616.00 | $ 308.00 | $ 7.51 | $ 5.85 | $ 7.15 | $ 7.51 | $ 11.27 | $ 300.49 | $ 11.27 | $ 311.76 | $ 3.76 |
| Topey | 4/27/08 | 45 | $ 337.50 | | | $ 335.71 | $ 7.46 | $ 5.85 | $ 7.15 | $ 7.46 | $ 11.19 | $ 298.41 | $ 55.95 | $ 354.36 | $ 18.65 |
| Topey | 5/4/08 | 45 | $ 337.50 | 5/9/08 | $ 671.42 | $ 335.71 | $ 7.46 | $ 5.85 | $ 7.15 | $ 7.46 | $ 11.19 | $ 298.41 | $ 55.95 | $ 354.36 | $ 18.65 |
| **Total** | | | | | | | | | | | | | | | $ 100.95 |
| Singh | 12/23/07 | 44 | $ 458.00 | 12/28/07 | $ 452.72 | $ 452.72 | $ 10.29 | $ 5.85 | $ 7.15 | $ 10.29 | $ 15.43 | $ 411.56 | $ 61.73 | $ 473.30 | $ 20.58 |
| Singh | 4/27/08 | 50 | $ 550.00 | | | $ 550.00 | $ 11.00 | $ 5.85 | $ 7.15 | $ 11.00 | $ 16.50 | $ 440.00 | $ 165.00 | $ 605.00 | $ 55.00 |
| Singh | 5/4/08 | 50 | $ 548.65 | 5/9/08 | $ 1,098.65 | $ 548.65 | $ 10.97 | $ 5.85 | $ 7.15 | $ 10.97 | $ 16.46 | $ 438.92 | $ 164.60 | $ 603.52 | $ 54.86 |
| Singh | 5/11/08 | 50 | $ 440.00 | | | $ 440.00 | $ 8.80 | $ 5.85 | $ 7.15 | $ 8.80 | $ 13.20 | $ 352.00 | $ 132.00 | $ 484.00 | $ 44.00 |
| Singh | 5/18/08 | 50 | $ 657.64 | 5/25/08 | $ 1,097.64 | $ 657.64 | $ 13.15 | $ 5.85 | $ 7.15 | $ 13.15 | $ 19.73 | $ 526.11 | $ 197.29 | $ 723.40 | $ 65.76 |
| Singh | 5/25/08 | 51.5 | $ 572.50 | | | $ 604.50 | $ 11.74 | $ 5.85 | $ 7.15 | $ 11.74 | $ 17.61 | $ 469.51 | $ 202.48 | $ 671.99 | $ 67.49 |
| Singh | 6/1/08 | 52 | $ 520.00 | 6/7/08 | $ 1,153.56 | $ 549.06 | $ 10.56 | $ 5.85 | $ 7.15 | $ 10.56 | $ 15.84 | $ 422.36 | $ 190.06 | $ 612.42 | $ 63.35 |
| Singh | 6/8/08 | 50 | $ 550.00 | | | $ 543.49 | $ 10.87 | $ 5.85 | $ 7.15 | $ 10.87 | $ 16.30 | $ 434.79 | $ 163.05 | $ 597.84 | $ 54.35 |
| Singh | 6/15/08 | 50 | $ 550.00 | 6/20/08 | $ 1,086.98 | $ 543.49 | $ 10.87 | $ 5.85 | $ 7.15 | $ 10.87 | $ 16.30 | $ 434.79 | $ 163.05 | $ 597.84 | $ 54.35 |
| Singh | 6/22/08 | 50 | $ 550.00 | | | $ 550.00 | $ 11.00 | $ 5.85 | $ 7.15 | $ 11.00 | $ 16.50 | $ 440.00 | $ 165.00 | $ 605.00 | $ 55.00 |
| Singh | 6/29/08 | 40 | $ 501.08 | 7/7/08 | $ 1,051.08 | No damages claimed for this workweek | | | | | | | | | |
| Singh | 7/6/08 | 48 | $ 520.00 | | | $ 520.09 | $ 10.84 | $ 5.85 | $ 7.15 | $ 10.84 | $ 16.25 | $ 433.41 | $ 130.02 | $ 563.44 | $ 43.34 |
| Singh | 7/13/08 | 55 | $ 798.40 | 7/18/08 | $ 1,318.64 | $ 798.55 | $ 14.52 | $ 5.85 | $ 7.15 | $ 14.52 | $ 21.78 | $ 580.76 | $ 326.68 | $ 907.44 | $ 108.89 |
| Singh | 7/20/08 | 55 | $ 625.00 | | | $ 625.00 | $ 11.36 | $ 5.85 | $ 7.15 | $ 11.36 | $ 17.05 | $ 454.55 | $ 255.68 | $ 710.23 | $ 85.23 |
| Singh | 7/27/08 | 40 | $ 593.82 | 8/1/08 | $ 1,218.82 | No damages claimed for this workweek | | | | | | | | | |
| Singh | 8/3/08 | 48 | $ 757.81 | | | $ 757.81 | $ 15.79 | $ 6.55 | $ 7.15 | $ 15.79 | $ 23.68 | $ 631.51 | $ 189.45 | $ 820.96 | $ 63.15 |
| Singh | 8/10/08 | 48 | $ 520.00 | 8/18/08 | $ 1,277.81 | $ 520.00 | $ 10.83 | $ 6.55 | $ 7.15 | $ 10.83 | $ 16.25 | $ 433.33 | $ 130.00 | $ 563.33 | $ 43.33 |
| Singh | 8/17/08 | 50 | $ 550.00 | | | $ 550.00 | $ 11.00 | $ 6.55 | $ 7.15 | $ 11.00 | $ 16.50 | $ 440.00 | $ 165.00 | $ 605.00 | $ 55.00 |
| Singh | 8/24/08 | 52 | $ 746.18 | 8/29/08 | $ 1,296.18 | No damages claimed for this workweek | | | | | | | | | |
| **Total** | | | | | | | | | | | | | | | $ 933.70 |

| Employee | Week Ending | Hrs | "Check Amt." | Paycheck Date | Paycheck Amount | Actual Weekly Pay | Paid Rate | Fed. Min. Wage | NYS Min. Wage | Reg. Rate | OT Rate | ST Wages Earned | OT Wages Earned | Total Earned | Total Owed |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Reid | 2/17/08 | 50.5 | | | | $ - | $ - | $ 5.85 | $ 7.15 | $ 7.15 | $ 10.73 | $ 286.00 | $ 112.61 | 398.61 | 398.61 |
| Reid | 2/24/08 | 30 | | | | $ - | $ - | $ 5.85 | $ 7.15 | 5.85 | N/A | $ 175.50 | N/A | $ 175.50 | 175.50 |
| Reid | 3/2/08 | 50.5 | | | | $ - | $ - | $ 5.85 | $ 7.15 | $ 7.15 | $ 10.73 | $ 286.00 | $ 112.61 | 398.61 | 398.61 |
| Reid | 3/9/08 | 20 | | | | $ - | $ - | $ 5.85 | $ 7.15 | 5.85 | N/A | $ 117.00 | N/A | 117.00 | 117.00 |
| Reid | 3/16/08 | 45 | $ 300.00 | | | $ 300.00 | $ 6.67 | $ 5.85 | $ 7.15 | $ 7.15 | $ 10.73 | $ 286.00 | $ 53.63 | 339.63 | 39.63 |
| Reid | 3/23/08 | 45 | 201.00 | 3/28/08 | $ 501.00 | $ 201.00 | $ 4.47 | $ 5.85 | $ 7.15 | $ 7.15 | $ 10.73 | $ 286.00 | $ 53.63 | 339.63 | 138.63 |
| Reid | 3/30/08 | 45 | 320.00 | | | $ 320.01 | $ 7.11 | $ 5.85 | $ 7.15 | $ 7.15 | $ 10.73 | $ 286.00 | $ 53.63 | 339.63 | 19.61 |
| Reid | 4/6/08 | 45 | 386.00 | 4/10/08 | 706.03 | $ 386.02 | $ 8.58 | $ 5.85 | $ 7.15 | 8.58 | $ 12.87 | $ 343.13 | $ 64.34 | 407.46 | 21.45 |
| Reid | 4/13/08 | 45 | 350.00 | | | $ 348.43 | $ 7.74 | $ 5.85 | $ 7.15 | 7.74 | $ 11.61 | $ 309.71 | $ 58.07 | 367.78 | 19.36 |
| Reid | 4/20/08 | 45 | 350.00 | 4/26/08 | 696.85 | $ 348.43 | $ 7.74 | $ 5.85 | $ 7.15 | 7.74 | $ 11.61 | $ 309.71 | $ 58.07 | 367.78 | 19.36 |
| **Total** | | | | | | | | | | | | | | | **$ 1,347.75** |
| Ramdial | 1/6/08 | 50 | $ 436.87 | | | $ 436.58 | $ 8.73 | $ 5.85 | $ 7.15 | 8.73 | $ 13.10 | $ 349.26 | $ 130.97 | 480.23 | 43.66 |
| Ramdial | 1/13/08 | 50 | 436.87 | 1/17/08 | $ 873.15 | $ 436.58 | $ 8.73 | $ 5.85 | $ 7.15 | 8.73 | $ 13.10 | $ 349.26 | $ 130.97 | 480.23 | 43.66 |
| Ramdial | 1/20/08 | 55 | 468.75 | | | $ 461.25 | $ 8.39 | $ 5.85 | $ 7.15 | 8.39 | $ 12.58 | $ 335.45 | $ 188.69 | 524.15 | 62.90 |
| Ramdial | 1/27/08 | 55 | 468.75 | 1/31/08 | 922.50 | $ 461.25 | $ 8.39 | $ 5.85 | $ 7.15 | 8.39 | $ 12.58 | $ 335.45 | $ 188.69 | 524.15 | 62.90 |
| Ramdial | 2/3/08 | 57 | 491.00 | | | $ 489.25 | $ 8.58 | $ 5.85 | $ 7.15 | 8.58 | $ 12.88 | $ 343.33 | $ 218.88 | 562.21 | 72.96 |
| Ramdial | 2/10/08 | 57 | 491.25 | 2/14/10 | 978.75 | $ 489.50 | $ 8.59 | $ 5.85 | $ 7.15 | 8.59 | $ 12.88 | $ 343.51 | $ 218.99 | 562.50 | 73.00 |
| Ramdial | 2/17/08 | 54 | - | | | $ 459.38 | $ 8.51 | $ 5.85 | $ 7.15 | 8.51 | $ 12.76 | $ 340.28 | $ 178.65 | 518.92 | 59.55 |
| Ramdial | 2/24/08 | 54 | - | 2/28/08 | 918.75 | $ 459.38 | $ 8.51 | $ 5.85 | $ 7.15 | 8.51 | $ 12.76 | $ 340.28 | $ 178.65 | 518.92 | 59.55 |
| Ramdial | 3/2/08 | 50 | 412.00 | | | $ 415.62 | $ 8.31 | $ 5.85 | $ 7.15 | 8.31 | $ 12.47 | $ 332.50 | $ 124.69 | 457.18 | 41.56 |
| Ramdial | 3/9/08 | 57 | 498.10 | 3/18/08 | 918.10 | $ 502.48 | $ 8.82 | $ 5.85 | $ 7.15 | 8.82 | $ 13.22 | $ 352.62 | $ 224.79 | 577.41 | 74.93 |
| **Total** | | | | | | | | | | | | | | | **$ 594.65** |
| Kahn | 3/2/08 | 50 | $ 412.00 | | | $ 407.26 | $ 8.15 | $ 5.85 | $ 7.15 | 8.15 | $ 12.22 | $ 325.81 | $ 122.18 | 447.99 | 40.73 |
| Kahn | 3/9/08 | 50 | 630.96 | 3/14/08 | $ 1,030.96 | $ 623.70 | $ 12.47 | $ 5.85 | $ 7.15 | 12.47 | $ 18.71 | $ 498.96 | $ 187.11 | 686.07 | 62.37 |
| Kahn | 3/30/08 | 50 | | | | $ - | $ - | $ 5.85 | $ 7.15 | 7.15 | $ 10.73 | $ 286.00 | $ 107.25 | 393.25 | 393.25 |
| Kahn | 4/6/08 | 55 | | | | $ - | $ - | $ 5.85 | $ 7.15 | 7.15 | $ 10.73 | $ 286.00 | $ 160.88 | 446.88 | 446.88 |
| Kahn | 4/13/08 | 60 | | | | $ - | $ - | $ 5.85 | $ 7.15 | 7.15 | $ 10.73 | $ 286.00 | $ 214.50 | 500.50 | 500.50 |
| Kahn | 4/20/08 | 60 | | | | $ - | $ - | $ 5.85 | $ 7.15 | 7.15 | $ 10.73 | $ 286.00 | $ 214.50 | 500.50 | 500.50 |
| **Total** | | | | | | | | | | | | | | | **$ 1,944.22** |

| Employee | Week Ending | Hrs | "Check Amt." | Paycheck Date | Paycheck Amount | Actual Weekly Pay | Paid Rate | Fed. Min. Wage | NYS Min. Wage | Reg. Rate | OT Rate | ST Wages Earned | OT Wages Earned | Total Earned | Total Owed |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| John | 11/4/07 | 40 | N/A | | | Outside limitations period | | | | | | | | | |
| John | 11/11/07 | 40 | N/A | 11/17/07 | $ 552.00 | $ 276.00 | $ 6.90 | $ 5.85 | $ 7.15 | $ 6.90 | N/A | $ 276.00 | N/A | $ 276.00 | $ - |
| John | 11/18/07 | 40 | N/A | | | $ 322.94 | $ 8.07 | $ 5.85 | $ 7.15 | $ 8.07 | N/A | $ 322.94 | N/A | $ 322.94 | $ - |
| John | 11/25/07 | 40 | N/A | 11/30/07 | $ 645.88 | $ 322.94 | $ 8.07 | $ 5.85 | $ 7.15 | $ 8.07 | N/A | $ 322.94 | N/A | $ 322.94 | $ - |
| John | 12/2/07 | 40 | N/A | | | $ 335.74 | $ 8.39 | $ 5.85 | $ 7.15 | $ 8.39 | N/A | $ 335.74 | N/A | $ 335.74 | $ - |
| John | 12/9/07 | 40 | N/A | 12/14/07 | $ 671.48 | $ 335.74 | $ 8.39 | $ 5.85 | $ 7.15 | $ 8.39 | N/A | $ 335.74 | N/A | $ 335.74 | $ - |
| John | 12/16/07 | 40 | N/A | | | $ 320.17 | $ 8.00 | $ 5.85 | $ 7.15 | $ 8.00 | N/A | $ 320.17 | N/A | $ 320.17 | $ - |
| John | 12/23/07 | 50 | N/A | 12/28/07 | $ 720.39 | $ 400.22 | $ 8.00 | $ 5.85 | $ 7.15 | $ 8.00 | $ 12.01 | $ 320.17 | $ 120.07 | $ 440.24 | 40.02 |
| John | 12/30/07 | 50 | N/A | 1/1/08 | $ 449.47 | $ 449.47 | $ 8.99 | $ 5.85 | $ 7.15 | $ 8.99 | $ 13.48 | $ 359.58 | $ 134.84 | $ 494.42 | 44.95 |
| John | 1/6/08 | 40 | N/A | | | $ - | $ - | $ 5.85 | $ 7.15 | $ 5.85 | N/A | $ 234.00 | N/A | $ 234.00 | 234.00 |
| John | 1/13/08 | 40 | N/A | | | $ - | $ - | $ 5.85 | $ 7.15 | $ 5.85 | N/A | $ 234.00 | N/A | $ 234.00 | 234.00 |
| **Total** | | | | | | | | | | | | | | $ | **552.97** |
| Hazell | 3/16/08 | 63 | N/A | | | $ 515.25 | $ 8.18 | $ 5.85 | $ 7.15 | $ 8.18 | $ 12.27 | $ 327.14 | $ 282.16 | 609.30 | $ 94.05 |
| Hazell | 3/23/08 | 63 | N/A | 3/28/08 | $ 1,030.50 | $ 515.25 | $ 8.18 | $ 5.85 | $ 7.15 | $ 8.18 | $ 12.27 | $ 327.14 | $ 282.16 | 609.30 | $ 94.05 |
| Hazell | 3/30/08 | 63 | N/A | | | $ 520.00 | $ 8.25 | $ 5.85 | $ 7.15 | $ 8.25 | $ 12.38 | $ 330.16 | $ 284.76 | 614.92 | $ 94.92 |
| Hazell | 4/6/08 | 63 | N/A | 4/10/08 | $ 1,040.00 | $ 520.00 | $ 8.25 | $ 5.85 | $ 7.15 | $ 8.25 | $ 12.38 | $ 330.16 | $ 284.76 | 614.92 | $ 94.92 |
| Hazell | 4/13/08 | 63 | N/A | | | $ - | $ - | $ 5.85 | $ 7.15 | $ 7.15 | $ 10.73 | $ 286.00 | $ 246.68 | 532.68 | $ 532.68 |
| Hazell | 4/20/08 | 63 | N/A | | | $ - | $ - | $ 5.85 | $ 7.15 | $ 7.15 | $ 10.73 | $ 286.00 | $ 246.68 | 532.68 | $ 532.68 |
| Hazell | 4/27/08 | 63 | N/A | | | $ - | $ - | $ 5.85 | $ 7.15 | $ 7.15 | $ 10.73 | $ 286.00 | $ 246.68 | 532.68 | $ 532.68 |
| Hazell | 5/4/08 | 63 | N/A | | | $ - | $ - | $ 5.85 | $ 7.15 | $ 7.15 | $ 10.73 | $ 286.00 | $ 246.68 | 532.68 | $ 532.68 |
| **Total** | | | | | | | | | | | | | | $ | **2,508.65** |
| Harris | 7/6/08 | 54 | $ 225.00 | | | $ 225.00 | $ 4.17 | $ 5.85 | $ 7.15 | $ 7.15 | $ 10.73 | $ 286.00 | $ 150.15 | 436.15 | $ 211.15 |
| Harris | 7/13/08 | 54 | $ 225.00 | 7/18/08 | $ 450.00 | $ 225.00 | $ 4.17 | $ 5.85 | $ 7.15 | $ 7.15 | $ 10.73 | $ 286.00 | $ 150.15 | 436.15 | $ 211.15 |
| Harris | 7/20/08 | 54 | $ 225.00 | | | $ 219.60 | $ 4.07 | $ 5.85 | $ 7.15 | $ 7.15 | $ 10.73 | $ 286.00 | $ 150.15 | 436.15 | $ 216.55 |
| Harris | 7/27/08 | 54 | $ 150.00 | 8/1/08 | $ 366.00 | $ 146.40 | $ 2.71 | $ 6.55 | $ 7.15 | $ 7.15 | $ 10.73 | $ 286.00 | $ 150.15 | 436.15 | $ 289.75 |
| Harris | 8/3/08 | 54 | $ 380.00 | | | $ 381.01 | $ 7.06 | $ 6.55 | $ 7.15 | $ 7.15 | $ 10.73 | $ 286.00 | $ 150.15 | 436.15 | $ 55.14 |
| Harris | 8/10/08 | 54 | $ 374.00 | 8/17/08 | $ 756.00 | $ 374.99 | $ 6.94 | $ 6.55 | $ 7.15 | $ 7.15 | $ 10.73 | $ 286.00 | $ 150.15 | 436.15 | $ 61.16 |
| Harris | 8/17/08 | 54 | $ 312.00 | | | $ 313.51 | $ 5.81 | $ 6.55 | $ 7.15 | $ 7.15 | $ 10.73 | $ 286.00 | $ 150.15 | 436.15 | $ 122.64 |
| Harris | 8/24/08 | 54 | $ 308.00 | 8/29/08 | $ 623.00 | No damages claimed for this workweek | | | | | | | | | |
| **Total** | | | | | | | | | | | | | | $ | **1,167.54** |

| Employee | Week Ending | Hrs | "Check Amt." | Paycheck Date | Paycheck Amount | Actual Weekly Pay | Paid Rate | Fed. Min. Wage | NYS Min. Wage | Reg. Rate | OT Rate | ST Wages Earned | OT Wages Earned | Total Earned | Total Owed |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Grace | 11/18/07 | 50 | | | | $ - | $ - | $ 5.85 | $ 7.15 | $ 7.15 | $ 10.73 | $ 286.00 | $ 107.25 | 393.25 | $ 393.25 |
| Grace | 11/25/07 | 50 | | | | $ - | $ - | $ 5.85 | $ 7.15 | $ 7.15 | $ 10.73 | $ 286.00 | $ 107.25 | 393.25 | $ 393.25 |
| Grace | 12/2/07 | 50 | | | | $ - | $ - | $ 5.85 | $ 7.15 | $ 7.15 | $ 10.73 | $ 286.00 | $ 107.25 | 393.25 | $ 393.25 |
| Grace | 12/9/07 | 50 | | | | $ - | $ - | $ 5.85 | $ 7.15 | $ 7.15 | $ 10.73 | $ 286.00 | $ 107.25 | 393.25 | $ 393.25 |
| Grace | 12/16/07 | 50 | $ 285.00 | | | $ 275.10 | $ 5.50 | $ 5.85 | $ 7.15 | $ 7.15 | $ 10.73 | $ 286.00 | $ 107.25 | 393.25 | $ 118.15 |
| Grace | 12/23/07 | 50 | 262.00 | 12/28/07 | $ 528.00 | $ 252.90 | $ 5.06 | $ 5.85 | $ 7.15 | $ 7.15 | $ 10.73 | $ 286.00 | $ 107.25 | 393.25 | $ 140.35 |
| Grace | 12/30/07 | 50 | $ 397.30 | 1/1/08 | $ 397.30 | $ 397.30 | $ 7.95 | $ 5.85 | $ 7.15 | $ 7.95 | $ 11.92 | $ 317.84 | $ 119.19 | 437.03 | $ 39.73 |
| **Total** | | | | | | | | | | | | | | | **$ 1,871.23** |
| | | | | | | | | | | | | | | | |
| Gillespie | 7/6/08 | 81 | $ 208.00 | | | $ 208.00 | $ 2.57 | $ 5.85 | $ 7.15 | $ 7.15 | $ 10.73 | $ 286.00 | $ 439.73 | 725.73 | $ 517.73 |
| Gillespie | 7/13/08 | 81 | $ 200.00 | 7/18/08 | $ 408.00 | $ 200.00 | $ 2.47 | $ 5.85 | $ 7.15 | $ 7.15 | $ 10.73 | $ 286.00 | $ 439.73 | 725.73 | $ 525.73 |
| Gillespie | 7/20/08 | 57 | $ 256.00 | | | $ 255.00 | $ 4.47 | $ 5.85 | $ 7.15 | $ 7.15 | $ 10.73 | $ 286.00 | $ 182.33 | 468.33 | $ 213.33 |
| Gillespie | 7/28/08 | 57 | 256.00 | 8/1/08 | $ 510.00 | $ 255.00 | $ 4.47 | $ 5.85 | $ 7.15 | $ 7.15 | $ 10.73 | $ 286.00 | $ 182.33 | 468.33 | $ 213.33 |
| Gillespie | 8/3/08 | 58 | | | | $ - | $ - | $ 5.85 | $ 7.15 | $ 7.15 | $ 10.73 | $ 286.00 | $ 193.05 | 479.05 | $ 479.05 |
| **Total** | | | | | | | | | | | | | | | **$ 1,949.15** |

| Employee | Week Ending | Hrs | "Check Amt." | Paycheck Date | Paycheck Amount | Actual Weekly Pay | Paid Rate | Fed. Min. Wage | NYS Min. Wage | Reg. Rate | OT Rate | ST Wages Earned | OT Wages Earned | Total Earned | Total Owed |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Chaudhry | 11/11/07 | 40 | $ 754.59 | 11/17/07 | $ 2,054.59 | No damages claimed for this workweek | | | | | | | | | |
| Chaudhry | 11/18/07 | 58 | $ 1,138.40 | | | $ 1,138.19 | $ 19.62 | $ 5.85 | $ 7.15 | $ 19.62 | $ 29.44 | $ 784.96 | $ 529.85 | $ 1,314.81 | $ 176.62 |
| Chaudhry | 11/25/07 | 58 | $ 1,026.53 | 11/30/07 | $ 2,164.53 | $ 1,026.34 | $ 17.70 | $ 5.85 | $ 7.15 | $ 17.70 | $ 26.54 | $ 707.82 | $ 477.78 | $ 1,185.60 | $ 159.26 |
| Chaudhry | 12/2/07 | 60 | $ 1,250.93 | | | $ 1,250.93 | $ 20.85 | $ 5.85 | $ 7.15 | $ 20.85 | $ 31.27 | $ 833.95 | $ 625.47 | $ 1,459.42 | $ 208.49 |
| Chaudhry | 12/9/07 | 55 | $ 1,050.93 | 12/25/07 | $ 2,301.86 | $ 1,050.93 | $ 19.11 | $ 5.85 | $ 7.15 | $ 19.11 | $ 28.66 | $ 764.31 | $ 429.93 | $ 1,194.24 | $ 143.31 |
| Chaudhry | 12/16/07 | 55 | $ 1,050.00 | | | $ 1,050.00 | $ 19.09 | $ 5.85 | $ 7.15 | $ 19.09 | $ 28.64 | $ 763.64 | $ 429.55 | $ 1,193.18 | $ 143.18 |
| Chaudhry | 12/23/07 | 55 | $ 1,000.87 | 12/28/07 | $ 2,050.87 | $ 1,000.87 | $ 18.20 | $ 5.85 | $ 7.15 | $ 18.20 | $ 27.30 | $ 727.91 | $ 409.45 | $ 1,137.35 | $ 136.48 |
| Chaudhry | 12/30/07 | 50 | $ 991.89 | 1/17/08 | $ 991.89 | $ 991.89 | $ 19.84 | $ 5.85 | $ 7.15 | $ 19.84 | $ 29.76 | $ 793.51 | $ 297.57 | $ 1,091.08 | $ 99.19 |
| Chaudhry | 1/6/08 | 60 | $ 840.00 | | | $ 825.44 | $ 13.76 | $ 5.85 | $ 7.15 | $ 13.76 | $ 20.64 | $ 550.29 | $ 412.72 | $ 963.01 | $ 137.57 |
| Chaudhry | 1/13/08 | 60 | $ 840.00 | 1/17/08 | $ 1,650.88 | $ 825.44 | $ 13.76 | $ 5.85 | $ 7.15 | $ 13.76 | $ 20.64 | $ 550.29 | $ 412.72 | $ 963.01 | $ 137.57 |
| Chaudhry | 1/20/08 | 55 | $ 1,100.00 | | | $ 1,100.25 | $ 20.00 | $ 5.85 | $ 7.15 | $ 20.00 | $ 30.01 | $ 800.18 | $ 450.10 | $ 1,250.29 | $ 150.03 |
| Chaudhry | 1/27/08 | 55 | $ 1,088.30 | 2/5/08 | $ 2,188.80 | $ 1,088.55 | $ 19.79 | $ 5.85 | $ 7.15 | $ 19.79 | $ 29.69 | $ 791.67 | $ 445.32 | $ 1,236.99 | $ 148.44 |
| Chaudhry | 2/3/08 | 55 | $ 875.00 | | | $ 1,096.43 | $ 19.94 | $ 5.85 | $ 7.15 | $ 19.94 | $ 29.90 | $ 797.40 | $ 448.54 | $ 1,245.95 | $ 149.51 |
| Chaudhry | 2/10/08 | 45 | $ 665.00 | 2/17/08 | $ 1,929.72 | $ 833.29 | $ 18.52 | $ 5.85 | $ 7.15 | $ 18.52 | $ 27.78 | $ 740.70 | $ 138.88 | $ 879.58 | $ 46.29 |
| Chaudhry | 2/17/08 | 55 | $ 875.00 | | | $ 787.77 | $ 14.32 | $ 5.85 | $ 7.15 | $ 14.32 | $ 21.48 | $ 572.92 | $ 322.27 | $ 895.19 | $ 107.42 |
| Chaudhry | 2/24/08 | 58 | $ 1,054.72 | 3/1/08 | $ 1,737.34 | $ 949.57 | $ 16.37 | $ 5.85 | $ 7.15 | $ 16.37 | $ 24.56 | $ 654.88 | $ 442.04 | $ 1,096.92 | $ 147.35 |
| Chaudhry | 3/2/08 | 36 | $ 613.32 | | | No damages claimed for this workweek | | | | | | | | | |
| Chaudhry | 3/9/08 | 40 | $ 560.00 | 3/14/08 | $ 1,173.32 | No damages claimed for this workweek | | | | | | | | | |
| Chaudhry | 3/16/08 | 50 | $ 770.00 | | | $ 770.00 | $ 15.40 | $ 5.85 | $ 7.15 | $ 15.40 | $ 23.10 | $ 616.00 | $ 231.00 | $ 847.00 | $ 77.00 |
| Chaudhry | 3/23/08 | 40 | $ 730.59 | 3/28/08 | $ 1,500.59 | No damages claimed for this workweek | | | | | | | | | |
| Chaudhry | 3/30/08 | 55 | $ 870.00 | | | $ 870.00 | $ 15.82 | $ 5.85 | $ 7.15 | $ 15.82 | $ 23.73 | $ 632.73 | $ 355.91 | $ 988.64 | $ 118.64 |
| Chaudhry | 4/6/08 | 40 | $ 738.88 | 4/10/08 | $ 1,608.88 | No damages claimed for this workweek | | | | | | | | | |

| Employee | Week Ending | Hrs | "Check Amt." | Paycheck Date | Paycheck Amount | Actual Weekly Pay | Paid Rate | Fed. Min. Wage | NYS Min. Wage | Reg. Rate | OT Rate | ST Wages Earned | OT Wages Earned | Total Earned | Total Owed |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Chaudhry | 4/13/08 | 55 | $ 870.00 | | | $ 870.38 | $ 15.83 | $ 5.85 | $ 7.15 | $ 15.83 | $ 23.74 | $ 633.00 | $ 356.06 | $ 989.07 | $ 118.69 |
| Chaudhry | 4/20/08 | 55 | $ 875.00 | 4/26/08 | $ 1,745.76 | $ 875.38 | $ 15.92 | $ 5.85 | $ 7.15 | $ 15.92 | $ 23.87 | $ 636.64 | $ 358.11 | $ 994.75 | $ 119.37 |
| Chaudhry | 4/27/08 | 50 | | | | $ 600.00 | $ 12.00 | $ 5.85 | $ 7.15 | $ 12.00 | $ 18.00 | $ 480.00 | $ 180.00 | $ 660.00 | $ 60.00 |
| Chaudhry | 5/4/08 | 50 | | | $ 1,200.00 | $ 600.00 | $ 12.00 | $ 5.85 | $ 7.15 | $ 12.00 | $ 18.00 | $ 480.00 | $ 180.00 | $ 660.00 | $ 60.00 |
| Chaudhry | 5/11/08 | 52 | $ 812.00 | | | $ 808.64 | $ 15.55 | $ 5.85 | $ 7.15 | $ 15.55 | $ 23.33 | $ 622.03 | $ 279.91 | $ 901.94 | $ 93.30 |
| Chaudhry | 5/18/08 | 52 | $ 812.00 | 5/25/08 | $ 1,617.27 | $ 808.64 | $ 15.55 | $ 5.85 | $ 7.15 | $ 15.55 | $ 23.33 | $ 622.03 | $ 279.91 | $ 901.94 | $ 93.30 |
| Chaudhry | 5/25/08 | 69 | $ 1,252.50 | | | $ 1,252.50 | $ 18.15 | $ 5.85 | $ 7.15 | $ 18.15 | $ 27.23 | $ 726.09 | $ 789.62 | $ 1,515.71 | $ 263.21 |
| Chaudhry | 6/1/08 | 67.5 | $ 1,214.91 | 6/7/08 | $ 2,467.41 | $ 1,214.91 | $ 18.00 | $ 5.85 | $ 7.15 | $ 18.00 | $ 27.00 | $ 719.95 | $ 742.45 | $ 1,462.39 | $ 247.48 |
| Chaudhry | 6/8/08 | 70 | $ 1,275.00 | | | $ 1,275.00 | $ 18.21 | $ 5.85 | $ 7.15 | $ 18.21 | $ 27.32 | $ 728.57 | $ 819.64 | $ 1,548.21 | $ 273.21 |
| Chaudhry | 6/15/08 | 55 | $ 929.44 | 6/20/08 | $ 2,204.44 | $ 929.44 | $ 16.90 | $ 5.85 | $ 7.15 | $ 16.90 | $ 25.35 | $ 675.96 | $ 380.23 | $ 1,056.18 | $ 126.74 |
| Chaudhry | 6/22/08 | 55 | $ 935.58 | | | $ 936.17 | $ 17.02 | $ 5.85 | $ 7.15 | $ 17.02 | $ 25.53 | $ 680.85 | $ 382.98 | $ 1,063.83 | $ 127.66 |
| Chaudhry | 6/29/08 | 50 | $ 935.50 | 7/7/08 | $ 1,872.26 | $ 936.09 | $ 18.72 | $ 5.85 | $ 7.15 | $ 18.72 | $ 28.08 | $ 748.87 | $ 280.83 | $ 1,029.70 | $ 93.61 |
| Chaudhry | 7/6/08 | 45 | $ 852.50 | | | $ 852.50 | $ 18.94 | $ 5.85 | $ 7.15 | $ 18.94 | $ 28.42 | $ 757.78 | $ 142.08 | $ 899.86 | $ 47.36 |
| Chaudhry | 7/13/08 | 40 | $ 797.70 | 7/18/08 | $ 1,650.20 | $ 797.70 | $ 19.94 | $ 5.85 | $ 7.15 | $ 19.94 | N/A | $ 797.70 | N/A | $ 797.70 | $ - |
| Chaudhry | 7/20/08 | 48 | $ 780.00 | | | $ 780.00 | $ 16.25 | $ 5.85 | $ 7.15 | $ 16.25 | $ 24.38 | $ 650.00 | $ 195.00 | $ 845.00 | $ 65.00 |
| Chaudhry | 7/27/08 | 48 | $ 997.89 | 8/1/08 | $ 1,777.89 | $ 997.89 | $ 20.79 | $ 6.55 | $ 7.15 | $ 20.79 | $ 31.18 | $ 831.58 | $ 249.47 | $ 1,081.05 | $ 83.16 |
| Chaudhry | 8/3/08 | 48 | $ 780.00 | | | $ 780.00 | $ 16.25 | $ 6.55 | $ 7.15 | $ 16.25 | $ 24.38 | $ 650.00 | $ 195.00 | $ 845.00 | $ 65.00 |
| Chaudhry | 8/10/08 | 52 | $ 1,020.21 | 8/18/08 | $ 1,800.21 | $ 1,020.21 | $ 19.62 | $ 6.55 | $ 7.15 | $ 19.62 | $ 29.43 | $ 784.78 | $ 353.15 | $ 1,137.93 | $ 117.72 |
| Chaudhry | 8/17/08 | 42.5 | $ 653.98 | | | $ 653.98 | $ 15.39 | $ 6.55 | $ 7.15 | $ 15.39 | $ 23.08 | $ 615.51 | $ 57.70 | $ 673.21 | $ 19.23 |
| Chaudhry | 8/24/08 | 48 | $ 937.50 | 8/29/08 | $ 1,591.48 | No damages claimed for this workweek | | | | | | | | | |
| **Total** | | | | | | | | | | | | | | $ | **4,360.41** |